UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CRAIG IVAN ADAMS

Petitioner,

v.

PATRICK COVELLO,

Respondent.

No.  2:19-cv-2572 WBS DB P

FINDINGS AND RECOMMENDATIONS

Petitioner, a state prisoner, proceeds pro se and in forma pauperis with a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner challenges a judgment of convictions entered on June 5, 2015 in the El Dorado County Superior Court. Petitioner stands convicted of multiple burglaries along with firearm and drug possession violations. Petitioner claims: (1) improper admission of his involuntary statements; (2) ineffective assistance of counsel for failing to object to admission of statements made during police interrogation; and (3) insufficient evidence to connect petitioner to the burglaries and to corroborate accomplice's testimony.[1] (ECF No. 1.) For the reasons set forth below, this court recommends denying the petition.

////

////

---

[1] Petitioner's habeas petition included a fourth claim. That claim, however, was unexhausted, and petitioner moved to delete it from his petition so he could proceed on the remaining three claims. (ECF No. 13.) This court subsequently struck that claim from the petition. (ECF No. 14.)

# BACKGROUND

## I.   Facts Established at Trial

The California Court of Appeal for the Third Appellate District provided the following summary of the facts presented at trial:

> From July to November 2010, multiple burglaries were committed along the Highway 50 corridor between Sacramento and South Lake Tahoe. Detectives from the El Dorado County Sheriff's Department were eventually able to connect defendant and his girlfriend, Katy Manoff, to the burglaries. Defendant and Manoff committed the burglaries so they could sell the property and obtain money for heroin. At the time of their arrest Manoff had $ 2,400 in her purse and defendant had $ 4,382 in his possession, as well as business cards for jewelry shops, coin shops, and pawn shops. A search of their motel room in South Lake Tahoe revealed property taken in the burglaries, along with firearms and heroin. Manoff had pawned some of the stolen property.

> Manoff ultimately pleaded guilty to multiple burglaries, and the trial court sentenced her to 22 years 4 months in prison. She testified for the prosecution in this case against defendant. The prosecution obtained cell phone records showing the location of defendant's and Manoff's cell phones during some of the burglaries.

> We set forth relevant details for each count asserted against defendant, including the victim's name in parentheses, the jury's verdict, the applicable statute, and, for some of the counts, a brief recitation of evidence presented at trial concerning that count:

> Count 1 (Nissen). The jury found defendant guilty of first degree residential burglary (§ 459) committed on November 13, 2010. Surveillance video showed Manoff's red car, occupied by two people, entering and exiting the neighborhood of the Nissen home around the time of the burglary. A telephoto lens and a gun were taken during the burglary. A hole in a bedspread and sheets indicated that a gun had been discharged. Manoff's cell phone was in the area of the Nissen home at the time. Defendant, in his statement to detectives after his arrest, admitted that he accidentally discharged a gun into the bed, and he directed investigators to where he hid the gun. Manoff testified that she knocked on the door to the residence, and when no one answered, defendant went into the house and eventually returned to Manoff with a camera lens and a gun.

> Count 2 (Alessio). The jury found defendant guilty of first degree residential burglary (§ 459) committed on October 27, 2010. During the burglary of the Alessios' home, a distinctive lighter and arrowheads were taken, along with jewelry and other items. The lighter and arrowheads were found in defendant's motel room. The cell phones of both defendant and Manoff were in the area of the Alessio home at the time of the burglary. Manoff testified that she knocked on the door to the residence, and when no one answered, defendant walked around the side of the house and eventually

returned to Manoff with a pillowcase full of miscellaneous items, including the lighter.

Count 3. The jury was unable to reach a verdict on a charge of possession for sale of a controlled substance (Health & Saf. Code, § 11351) on November 17, 2010.

Count 4. The jury found defendant guilty of possession of a firearm by a convicted felon (former § 12021, subd. (a)(1) ) committed on November 17, 2010.

Count 5. The jury found defendant guilty of possession of a firearm by a convicted felon (former § 12021, subd. (a)(1) ) committed on November 17, 2010.

Count 6. The jury found defendant guilty of possession of a firearm by a convicted felon (former § 12021, subd. (a)(1) ) committed on November 17, 2010.

Count 7. The jury found defendant guilty of possession of ammunition by a convicted felon (former § 12316, subd. (b)(1) ) committed on November 17, 2010.

Count 8 (Martyn). The jury was unable to reach a verdict on a charge first degree residential burglary (§ 459) on October 16, 2010.

Count 9 (Little). The jury found defendant guilty of first degree residential burglary (§ 459) committed on September 30, 2010. Lai-Lai Bui Little and her husband were both police officers. During the burglary of their home, a photo of the Littles in uniform was on the dresser and uniforms were in the closet. The cell phones of both defendant and Manoff were in the area of the Little home at the time of the burglary. Manoff pawned jewelry from the Little home. In his statement after his arrest, defendant referred to the home of an Asian police officer. Manoff testified that she knocked on the front door to make sure no one was home before defendant went in. Defendant told Manoff it appeared that police officers lived at the home.

Count 10 (Salinger). The jury found defendant guilty of first degree residential burglary (§ 459) committed on October 6, 2010. Defendant and Manoff's cell phones were in the area when the Salinger home was burglarized. Defendant went with Manoff on the same day to pawn items taken in the burglary. Defendant participated in the transactions, but only Manoff's name was put on the receipt. Manoff testified that she knocked on the door, and when no one answered, defendant went inside.

Count 11 (Lawrence and Nancy Arens). The jury found defendant guilty of first degree residential burglary (§ 459) committed on September 26, 2010. Defendant knew Lawrence and Nancy Arens from church when he was a teenager. The Arens' home was burglarized while they were at church. Manoff pawned some of the property, including a piece of jewelry with the Arens' names. Manoff testified that she stayed in the car while defendant went into the Arens' home. After the burglary, defendant and Manoff counted the

3

cash taken and sold the jewelry. The cell phones of both defendant and Manoff were in the area of the Arens' home when the home was burglarized. In his statement after his arrest, defendant admitted burglarizing the Arens' home.

Count 12 (Niven). The jury found defendant guilty of first degree residential burglary (§ 459) committed on October 18, 2010. The Nivens' home was burglarized and a distinctive dragonfly bracelet was taken. The cell phones of both defendant and Manoff were in the area of the Nivens' home around the time the home was burglarized. Two Tiffany jewelry bags taken in the Niven burglary were found in defendant's motel room. Manoff testified that she knocked on the front door of the Nivens' home, and when no one answered, defendant entered the home and came out with jewelry, including the dragonfly bracelet.

Count 13 (Rooker). The jury found defendant guilty of attempting to commit first degree residential burglary (§§ 459, 664) on October 6, 2010. An El Dorado County Sherriff's deputy was sent to the Rookers' home in response to a report of a prowler. Surveillance video showed a red car occupied by two people enter the community where the Rookers' home was located around the time of the reported prowler. On the day of the Rooker attempted burglary, defendant and Manoff went together to pawn the items taken from the Salinger home, which was burglarized the same day, and in the same neighborhood where the prowler was seen at the Rookers' home. Manoff testified that she and defendant were in the red car shown on the surveillance video. Manoff knocked on the door of the Rookers' home, and when no one answered, defendant went around the side of the house, but soon returned to the car in a panic because a woman in the house pointed a gun at him.

Count 14 (Danny and Jerri Arens). The jury found defendant guilty of first degree residential burglary (§ 459) committed on October 17, 2010. Defendant admitted he burglarized Danny and Jerri Arens' home. The cell phones of both defendant and Manoff were in the area of the Arens' home when the home was burglarized. Manoff testified that she and defendant committed the burglary.

Count 15 (McCarthy). The jury found defendant guilty of first degree residential burglary (§ 459) committed on October 28, 2010. The cell phones of both defendant and Manoff were in the area of the McCarthys' home when the home was burglarized. Manoff pawned items from the McCarthy burglary and testified that she knocked on the door of the McCarthys' home, and when no one answered, defendant went into the house. He returned to the car with jewelry, ammunition, and other items.

Count 16 (Nissen). The jury found defendant guilty of theft of a firearm (§ 487, subd. (d)(2) ) committed on November 13, 2010. Our description for Count 1 explains the circumstances of the burglary of the Nissen home on the same date.

Count 17 (Felton). The jury found defendant guilty of first degree residential burglary (§ 459) committed on July 26, 2010. El Dorado

4

1
2
3
4

County Sheriff's Sergeant Chris Felton testified that his home was burglarized. During the burglary, a shotgun was taken out of his closet and left against the wall outside the closet. Property taken during the burglary was never recovered. In defendant's statement after his arrest, he said he moved the shotgun and took some jewelry, which was pawned in Carson City.

5
6

Count 18. The jury found defendant guilty of possession of a firearm by a convicted felon (former § 12021, subd. (a)(1)) committed on November 16, 2010.

7
8
9

In addition to the substantive counts, the amended information alleged that defendant had a prior prison term (§ 1063), a prior strike conviction (§ 667(b)-(i)), and a prior serious felony conviction (§ 667, subd. (a)(1)). Defendant admitted various enhancement allegations.

10
11

The trial court sentenced defendant but then recalled the sentence and sentenced him again because the trial court had imposed too many prior serious felony conviction enhancements. With the correction, the trial court imposed a total sentence of 50 years 4 months in prison.

12  (ECF No. 19-19 at 2–7; People v. Adams, No. C078856, 2019 WL 1497145, at *1–3 (Cal. Ct.

13  App. Apr. 5, 2019).)

14  **II.    Procedural Background**

15      **A.   Judgment**

16          A jury convicted petitioner of multiple burglaries along with firearm and drug possession

17  violations. (ECF No. 11-1.) The trial court imposed an aggregate prison term of 50 years and 4

18  months. (Id.)

19  **III.   State Appeal and Federal Proceedings**

20          Petitioner timely appealed his convictions, raising grounds of (1) admission of an

21  involuntary statement, (2) ineffective assistance of counsel for failing to object to admission of

22  involuntary statements made during police interrogation, and (3) insufficient evidence to support

23  some of his convictions. (ECF 11-3.) The California Court of Appeal modified the judgment to

24  strike one of the prior prison term enhancements and affirmed the judgment as modified. (ECF

25  No. 11-2 at 2.) Petitioner sought review in the California Supreme Court. (ECF No. 19-21.) On

26  June 12, 2019, the California Supreme Court summarily denied review. (ECF No. 19-22.)

27  Petitioner did not seek collateral relief in state court.

28  ////

The present petition was filed on December 16, 2019 and is fully briefed. (ECF Nos. 1, 18, and 22.)

## STANDARDS OF REVIEW APPLICABLE TO HABEAS CORPUS CLAIMS

A court can entertain an application for a writ of habeas corpus by a person in custody under a judgment of a state court on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for an alleged error in the interpretation or application of state law. See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502 U.S. 62, 67–68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000) (stating that "a violation of state law standing alone is not cognizable in federal court on habeas.").

This court may not grant habeas corpus relief unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. Greene v. Fisher, 565 U.S. 34, 37 (2011); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405–06 (2000)). Circuit court precedent "'may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably.'" Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)). But it may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, 569 U.S. 58, 64 (2013) (per curiam) (citing Parker v. Matthews, 567 U.S. 37 (2012)); see also Carey v. Musladin, 549 U.S. 70, 76–77 (2006). Nor may circuit precedent be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct." Marshall, 569 U.S. at 64. ////

6

A habeas corpus application can invoke § 2254(d)(1) in two ways. First, a state court decision is "contrary to" clearly established federal law if it either applies a rule that contradicts a holding of the Supreme Court or reaches a different result from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003) (quoting Williams, 529 U.S. at 405–06). Second, "under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] [Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (quoting Williams, 529 U.S. at 413); Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 120 S. Ct. at 1522; see also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Andrade, 538 U.S. at 75. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 786–87.

A petitioner may also challenge a state court's decision as being an unreasonable determination of facts under § 2254(d)(2). Hibbler v. Benedetti, 693 F.3d 1140, 1146 (9th Cir. 2012). Challenges under this clause fall into two categories; first, the state court's findings of fact "were not supported by substantial evidence in the state court record," or second, the "fact-finding process itself" was "deficient in some material way." Id.; see also Hurles v. Ryan, 752 F.3d 768, 790–91 (9th Cir. 2014) (If a state court makes factual findings without an opportunity for the petitioner to present evidence, the fact-finding process may be deficient and the state court opinion may not be entitled to deference.). Under the "substantial evidence" category, the court

asks whether "an appellate panel, applying the normal standards of appellate review," could reasonably conclude that the finding is supported by the record. Hibbler, 693 F.3d at 1146 (9th Cir. 2012) (quoting Taylor v. Maddox, 366 F.3d 992, 999–1000 (9th Cir. 2004), overruled on other grounds by Murray v. Schriro, 745 F.3d 984, 999–1001 (9th Cir. 2014)). The "fact-finding process" category, however, requires the federal court to "be satisfied that any appellate court to whom the defect [in the state court's fact-finding process] is pointed out would be unreasonable in holding that the state court's fact-finding process was adequate." Hibbler, 693 F.3d at 1146–47 (quoting Lambert v. Blodgett, 393 F.3d 943, 972 (9th Cir. 2004)). The state court's failure to hold an evidentiary hearing does not automatically render its fact-finding process unreasonable. Id. at 1147. Further, a state court may make factual findings without an evidentiary hearing if "the record conclusively establishes a fact or where petitioner's factual allegations are entirely without credibility." Perez v. Rosario, 459 F.3d 943, 951 (9th Cir. 2006) (citing Nunes v. Mueller, 350 F.3d 1045, 1055 (9th Cir. 2003)).

If a petitioner overcomes one of the hurdles posed by section 2254(d), this court reviews the merits of the claim de novo. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 737 (9th Cir. 2008) (en banc). For claims upon which a petitioner seeks to present new evidence, the petitioner must meet the standards of 28 U.S.C. § 2254(e)(2) by showing that he has not "failed to develop the factual basis of [the] claim in State court proceedings" and by meeting the federal case law standards for the presentation of evidence in a federal habeas proceeding. See Cullen v. Pinholster, 563 U.S. 170, 186 (2011).

This court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). "[I]f the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, [this court] may consider both decisions to 'fully ascertain the reasoning of the last decision.'" Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc) (quoting Barker v. Fleming, 423 F.3d 1085, 1093 (9th Cir. 2005)). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law

procedural principles to the contrary." <u>Richter</u>, 562 U.S. at 99. This presumption may be overcome if "there is reason to think some other explanation for the state court's decision is more likely." <u>Id.</u> (citing <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision rejects some of petitioner's claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. <u>Johnson v. Williams</u>, 568 U.S. 289, 293 (2013). When it is clear that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply, and a federal habeas court reviews the claim de novo. <u>Stanley</u>, 633 F.3d at 860.

# ANALYSIS

Petitioner asserts three grounds for relief: (1) erroneous admission of involuntary statement; (2) ineffective assistance of counsel for failing to object to admission of statements made during interrogation; and (3) insufficient evidence to connect petitioner to the burglaries and to corroborate accomplice's testimony.

## I.   Involuntary Statements

Petitioner claims that the incriminating statements he made during police interrogation were involuntary[2] and should have been deemed inadmissible by the court. (ECF No. 1 at 5; <u>see also</u> ECF No. 19-16.) Respondent contends that petitioner forfeited this argument by failing to make this objection at trial and, even if it was properly raised, the claim fails on the merits. (ECF No. 18 at 11–25.)

### A.  State Court Opinion

Petitioner raised this claim in his direct appeal as part of his broader argument that his trial counsel was ineffective for failing to object to admission of the statements.

////

---

[2] The transcript from his police interview shows that both before and after receiving Miranda warnings, petitioner asked if the conversation was off the record, and the police agreed. (ECF No. 19-6 at 26, 32–33, 57–59, 70–72, 77.) At other times during the interview, the police noted that the interview was on the record and that they would be taking notes. (<u>Id.</u> at 28–29, 31, 34, 65–66, 72.)

In the last reasoned state court decision, the California Court of Appeal considered and rejected the claim on procedural grounds:

### I

Defendant contends his trial counsel was ineffective in failing to move to suppress defendant's statements obtained after arrest.

### A

On November 17, 2010, Detective Richard Horn and Detective Jeff Leikauf with the El Dorado County Sheriff's Department interviewed defendant at the South Lake Tahoe Police Department. At the beginning of the interview and numerous times during the interview, defendant said he was sick from coming off drugs. He was cold and shaking, did not feel well, could not think straight, could not talk straight, and was tired and drowsy, He begged to delay the interview to another time after he was able to recover. Detective Horn declined to delay the interview because the detectives would not be able to talk to defendant after he was arraigned and had an attorney appointed. Detective Horn told defendant he had interviewed people "convulsing on the floor, and they can still answer the questions."

Detective Horn advised defendant of his *Miranda*[2] rights. During the interview and after the advisement, defendant said he wanted to talk "off the record." Detective Horn assured defendant that they were off the record. Defendant said, "So, none of this can be used against me ... [¶] ... in a court of law, what we're talking about right now." Detective Horn said, "Correct." This type of exchange in which defendant asked for and received assurances that what was being said was off the record and could not be used in a court of law occurred several times.

[N.2] *Miranda v. Arizona* (1996) 384 U.S. 436 [16 L.Ed.2d 694].

During the interview, defendant made both incriminating and exculpating statements. When Detective Horn accused defendant of possessing heroin for sale, defendant said it was for personal use. Defendant offered to tell the detectives where a gun was in an effort to get the gun off the streets because he was raised Christian. He said he did not know anything about the guns found in the backpack in the motel room; however, after further questioning and further protests that he was not feeling well, he said he knew about the guns. He denied having involvement with a pawn shop receipt in Manoff's name or with the jewelry that Manoff sold. He denied that he, in Detective Horn's words, "victimized about 25 people." He denied being at the locations of the burglaries. He claimed the motel room was Manoff's and he stayed there only a few nights. He admitted growing up with the Arens brothers, but he denied burglarizing the Arens' homes. He admitted he may have gone to Greenstone Country, the location of some of the burglaries, but only to sleep in the car.

Eventually, defendant admitted being present for or involved in some of the burglaries but continued to deny others. He claimed someone else's crew used pillow cases in burglaries. He admitted burglaries in Pollock Pines, including the Arens' home, but not in Camino. He said in one of the burglaries he accidentally discharged a gun and at a police officer's house he and Manoff only stole jewelry. He said he did not take a shotgun from under the mattress. Instead, he moved a shotgun from one side of the closet to the other side. He and Manoff took the jewelry to pawn shops. One of the recovered guns came from one of the burgled homes. When Detective Horn accused defendant of up to 40 burglaries, defendant said, "No, we didn't do that many." He added, "maybe five, six." He continued to deny many of the accusations made by the detectives. Regarding the money found in his possession, defendant claimed he had it for a long time; he had saved it to buy a truck.

The trial court admitted into evidence defendant's interview statements to the police. Defense counsel did not object or move to suppress the statements.

In closing argument, defense counsel identified various evidentiary problems with establishing that defendant was guilty of each charged crime. He spoke at length about defendant's statement to the detectives, pointing out that defendant was "drug sick" from heroin withdrawal. He focused on defendant's confusion about the burglaries. Defense counsel attacked defendant's statements as involuntary and argued defendant never clearly admitted any specific burglaries or thefts. He pointed to the addiction of Manoff and defendant and claimed the evidence of heroin possession only supported personal use. Defense counsel also referenced defendant's denial that the motel room was his; he only stayed there on occasion. In addition, he argued the evidence did not tie defendant to the backpack found in the motel room containing guns and ammunition. Defense counsel said defendant denied taking a safe or committing the Felton burglary and that he had money to buy a truck.

**B**

Failure to object to admission of evidence at trial forfeits the matter on appeal. (Evid. Code, § 353, subd. (a); *People v. Demetrulias* (2006) 39 Cal.4th 1, 20.) Defendant did not object to admission of his statement or move to suppress it in the trial court and has thereby forfeited the contention that it was improperly admitted.

(ECF No. 19-19 at 7–9); Adams, 2019 WL 1497145, at *3–5.

**B. Discussion**

A federal habeas court will not review a petitioner's claim if the state court has determined that petitioner defaulted on that claim in state court due to an independent and adequate state procedural rule. Coleman v. Thompson, 501 U.S. 722, 750 (1991); Ylst, 501 U.S. at 801 ("When a state-law default prevents the state court from reaching the merits of a federal

11

claim, that claim can ordinarily not be reviewed in federal court."). A state procedural rule is independent unless it appears "to rest primarily on federal law or to be interwoven with federal law." Coleman, 501 U.S. at 735. The state procedural rule is adequate if it is "'firmly established and regularly followed' by the time as of which it is to be applied." Ford v. Georgia, 498 U.S. 411, 424 (1991). This procedural bar doctrine is based on the concerns of comity and federalism. Coleman, 501 U.S. at 730–31 ("Without the rule…habeas would offer state prisoners whose custody was supported by independent and adequate state grounds an end run around the limits of this Court's jurisdiction and a means to undermine the State's interest in enforcing its laws."). A petitioner can only avoid default if he can show either cause and prejudice, or a fundamental miscarriage of justice. Harris v. Reed, 489 U.S. 255, 262 (1989).

Because the state appellate court relied on procedural bar to resolve petitioner's claim, this court must determine whether the state court's decision—that petitioner forfeited his claim by failing to object to admission of his statement at trial—provides an independent and adequate ground sufficient to bar federal review. It does. To preserve a claim for appeal, California's contemporaneous objection rule requires a defendant to "'make a timely and specific objection and ask the trial court to admonish the jury to disregard the impropriety,' unless doing so would be futile or an admonition to would not cure the harm." Armenta v. Kernan, 735 F. App'x 255, 259 (9th Cir. May 18, 2018) (quoting People v. Clark, 52 Cal. 4th 856 (2011)). The Ninth Circuit has repeatedly recognized that California's contemporaneous objection rule is an adequate and independent state law ground. See Paulino v. Castro, 371 F.3d 1083, 1093 (9th Cir. 2004); see also Xiong v. Felker, 681 F.3d 1067, 1075 (9th Cir. 2012); Fairbank v. Ayers, 650 F.3d 1243, 1256–57 (9th Cir. 2011) (California has consistently applied its "contemporaneous objection rule when a party fails to object to the admission of evidence."); Rich v. Calderon, 187 F.3d 1064, 1070 (9th Cir. 1999). Petitioner's claim, therefore, is procedurally barred unless he fits into one of the exceptions.

The first exception is whether petitioner has shown cause and prejudice for the procedural default. Martinez v. Ryan, 566 U.S. 1, 10 (2012); Coleman, 501 U.S. at 750. The first element, cause, "must be something *external* to the petitioner, something that cannot be fairly attributed to

him." Coleman, 501 U.S. at 753. Although "[a]ttorney ignorance or inadvertence" is not cause, an "[a]ttorney error that constitutes ineffective assistance of counsel is cause." Coleman, 501 U.S. at 753–54; see also Bradford v. Davis, 923 F.3d 589, 612 (9th Cir. 2019). "[C]ause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). "Where a petitioner defaults a claim as a result of the denial of the right to effective assistance of counsel, the State, which is responsible for the denial as a constitutional matter, must bear the cost of any resulting default and the harm to state interests that federal habeas review entails." Coleman, 501 U.S. at 754. The second element, prejudice, requires a showing of "actual prejudice." Id. at 750. This means that the petitioner bears the burden of showing "'not merely that the errors at … trial created a *possibility* of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" Carrier, 477 U.S. at 494 (quoting United States v. Frady, 456 U.S. 152, 170 (1982)).

Here, petitioner cannot satisfy the requirements of the cause and prejudice exception. "An attorney error does not qualify as 'cause' to excuse procedural default unless the error amounted to constitutionally ineffective assistance of counsel." Davila v. Davis, 137 S.Ct. 2058, 2062 (2017). "The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." Kimmelman v. Morrison, 477 U.S. 365, 374 (1986). To make an ineffective assistance of counsel claim, defendant must satisfy the two-part test established in Strickland v. Washington, 466 U.S. 668 (1984). Defendant must prove that (1) his counsel's performance was deficient, falling below an objective standard of reasonableness, and (2) his counsel's deficient performance prejudiced the defense. Strickland, 466 U.S. at 687–88. For the deficiency prong, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689. For the prejudice prong, the defendant "must show that there is a reasonable

13

1    probability that, but for counsel's unprofessional errors, the result of the proceeding would have

2    been different. A reasonable probability is a probability sufficient to undermine confidence in the

3    outcome." Id. at 694.

4         Even on de novo review, petitioner cannot prove that counsel's failure to object to

5    admission of his statements was deficient. Counsel had several tactical reasons for not objecting

6    to the statements. (ECF No. 19-14 at 49.) When the prosecutor played the interrogation video to

7    the jury, defense counsel said "I want the jury to see everything." (ECF No. 19-12 at 216.) And

8    instead of cross-examining the witness who testified about the interrogation video, defense

9    counsel stated "I think the video [and audio recording] speaks for itself." (Id. at 232.) During his

10   closing argument, defense counsel again encouraged the jury to consider the interrogation video.

11   (ECF No. 19-13 at 81 ("I really, really recommend that you look at that video again.").

12   Specifically, defense counsel highlighted that the video showed that petitioner was "drug sick"

13   and "undergoing heroin withdrawal," and that petitioner "waffle[d] back and forth regarding the

14   burglaries" and was "confused about the facts." (Id. at 81–82; see also id. at 84 ("There's nothing

15   clean about his so-called admissions or so-called confessions. I would submit to you, that's not an

16   abiding conviction."); id. at 98 ("If you listen to that video and that audio, he's pretty confused a

17   lot of the way through."); ECF No. 19-6 at 26–27, 36–37, 39–40, 44, 63.) Defense counsel also

18   used petitioner's admission that the heroin was for personal consumption to counter the

19   possession of a controlled substance for sale charge. (ECF No. 19-13 at 93–94; see also ECF No.

20   19-6 at 31–32, 41–42, 69.)

21        Defense counsel's strategy worked, albeit only in part. The jury found petitioner guilty on

22   17 counts, but it did not reach a verdict on count three (possession of a controlled substance for

23   sale) and count eight (one count of residential burglary). (ECF No. 19-13 at 124–31.) Lastly,

24   petitioner also denied many of the officers' accusations and knowledge or ownership of items in

25   the hotel room, and he provided information about other crimes. (See, e.g., ECF No. 19-6 at 27,

26   36, 45, 50–52, 54–55, 59–60, 74–79, 82, 87, 90, 94.) Based on this court's review of the record,

27   petitioner cannot demonstrate that counsel performed deficiently under Strickland. Because

28   counsel was not constitutionally ineffective, petitioner cannot establish cause or qualify for the

14

first exception to the procedural bar doctrine.

The second exception is fundamental miscarriage of justice. Coleman, 501 U.S. at 750; Larsen v. Soto, 742 F.3d 1083, 1095 (9th Cir. 2013). This exception is extremely limited. It applies when petitioner can show "a constitutional violation has probably resulted in a conviction of one who is actually innocent." Carrier, 477 U.S. at 496; see also Johnson v. Knowles, 541 F.3d 933, 937 (9th Cir. 2008) ("[W]e conclude that the miscarriage of justice exception is limited to those *extraordinary* cases where the petitioner asserts his innocence and establishes that the court cannot have confidence in the contrary finding of guilt."). Because petitioner only alleges a procedural violation without asserting his innocence, he fails to meet this standard.

his court recommends finding petitioner's claim one procedurally barred and denying habeas relief on this claim.

## II.   Ineffective Assistance of Counsel

Petitioner claims that he was denied effective assistance of counsel because his counsel failed to object to admission of his statements to the police. (ECF No. 1 at 7; ECF No. 19-16 at 57–60.)

### A.  State Court Opinion

Petitioner raised this claim in his direct appeal. In the last reasoned state court decision, the California Court of Appeal considered and rejected the claim:

> Acknowledging the failure to object, defendant argues his trial counsel was ineffective. "To prevail [on a claim of ineffective assistance of counsel], [a defendant] must establish his counsel's representation fell below an objective standard of reasonableness and there is a reasonable probability that, but for counsel's deficient performance, the result of the trial would have been different." (*People v. Mesa* (2006) 144 Cal.App.4th 1000, 1007.) " ' "The burden of sustaining a charge of inadequate or ineffective representation is upon the defendant. The proof ... must be a demonstrable reality and not a speculative matter." [Citation.]' " (*Ibid.*)
>
> "Reviewing courts will reverse convictions on the ground of inadequate counsel only if the record on appeal affirmatively discloses that counsel had no rational tactical purpose for his act or omission." (*People v. Zapien* (1993) 4 Cal.4th 929, 980.) "The decision whether to object to the admission of evidence is 'inherently tactical,' and a failure to object will rarely reflect deficient performance by counsel." (*People v. Castaneda* (2011) 51 Cal.4th

15

1292, 1335.) " ' "Tactical errors are generally not deemed reversible, and counsel's decisionmaking must be evaluated in the context of the available facts." [Citation.]' " (*People v. Stanley* (2006) 39 Cal.4th 913, 954.) In general, it is inappropriate for an appellate court to speculate as to the existence or nonexistence of a tactical basis for a defense attorney's course of conduct. (*People v. Wilson* (1992) 3 Cal.4th 926, 936.) Accordingly, "when the record on appeal does not illuminate the basis for the attorney's challenged acts or omissions, a claim of ineffective assistance is more appropriately made in a habeas corpus proceeding, in which the attorney has the opportunity to explain the reasons for his or her conduct." (*Ibid.*)

"On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation." (*People v. Mai* (2013) 57 Cal.4th 986, 1009; *see People v. Mickel* (2016) 2 Cal.5th 181, 198 [reversal is warranted on direct appeal only if there is "affirmative evidence that counsel had ' " 'no rational tactical purpose' " ' for an action or omission"].)

Here, even if we were to assume that defendant's statements would have been suppressed had trial counsel moved to suppress them, the record is insufficient to reverse defendant's convictions because it does not affirmatively establish that trial counsel had no rational tactical purpose for not moving to suppress. The evidence of defendant's guilt was compelling even without his statements, and defense counsel may have determined that the statements could be helpful to the defense. In closing argument, defense counsel used defendant's statements to argue that defendant was not involved in all of the burglaries, was only loosely connected to the motel room where much of the evidence was found, and did not possess the heroin for sale. Defendant's statements gave the jury an alternate reason for the cash found in his possession, and it offered evidence that there were other "crews" committing burglaries. While it appears the jury did not credit some of these arguments, it was unable to reach a verdict on the possession for sale count.

Defendant argues that without his statements, there was no evidence of any kind to connect him to the July burglary of the Felton residence, because that offense was not described by Manoff. He further argues that without his statements there would have been insufficient evidence to corroborate Manoff's accomplice testimony. But defendant cites no authority for the proposition that, if a defendant's statement provides the sole evidence of one of many counts against defendant, defense counsel can have no rational tactical purpose in not objecting to admission of the defendant's statement. We know of no such authority. (*See Amato v. Mercury Casualty Co.* (1993) 18 Cal.App.4th 1784, 1794 [failure to cite authority forfeits contention].) In any event, defendant's arguments do not establish that there could be no rational tactical purpose not to object; as we have explained, possible tactical reasons existed for allowing the statements.

> Defendant also does not provide authority for the proposition that allowing admission of a potentially suppressible statement constitutes ineffective assistance of counsel if, in some regards, the statement supplied corroborating evidence for an accomplice's testimony. On this record, we see no reason that trial counsel could not weigh the pros and cons of allowing admission of defendant's statement.
>
> Because the other evidence of defendant's guilt was compelling and counsel used defendant's statements in an attempt to convince the jury that defendant was not guilty of some of the charges, we cannot say defense counsel had no rational tactical purpose in not objecting to, or in not moving to suppress, defendant's statements. Accordingly, the ineffective assistance claim does not succeed.

(ECF No. 19-19 at 9–12); <u>Adams</u>, 2019 WL 1497145, at *5–6.

**B. Discussion**

As discussed earlier, to adequately state such a claim, petitioner must prove that counsel's performance was both deficient and prejudiced the defense. <u>Strickland</u>, 466 U.S. at 687–88. Although satisfying this standard is never an easy task, "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." <u>Richter</u>, 562 U.S. at 105. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." <u>Id.</u> (internal citations omitted); <u>see also</u> <u>Schriro v. Landrigan</u>, 550 U.S. 465, 473 (2007). When § 2254(d) applies, the "question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." <u>Richter</u>, 562 U.S. at 105; <u>see also</u> <u>Premo v. Moore</u>, 562 U.S. 115, 132 (2011).

In the instant case, the state court's rejection of petitioner's ineffective assistance of counsel claim was not unreasonable. As discussed at length *supra* section I, there is a reasonable argument that defense counsel had a tactical reason for not objecting to the admission of petitioner's statements. On habeas review, it is not within the domain of this court to second-guess defense counsel's trial strategy, especially when the litigation tactics do not work out as counsel had hoped. <u>Strickland</u>, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenge conduct, and to evaluate the conduct from counsel's perspective at the time.").

Petitioner contends that counsel had no tactical purpose for allowing his statements regarding the Felton burglary because there was no other evidence linking him to the crime. (ECF No. 19-16 at 59.) The state appellate court rejected this argument, finding no authority to support his contention and possible tactical reasons for allowing the statements. (ECF No. 19-19 at 11.) This court agrees with the state court. Here, defense counsel took his chances by deciding not to object to petitioner's statements and emphasizing portions of it to support the defense. For example, regarding the Felton burglary, while petitioner admitted that he moved the shotgun, he denied taking the safe with social security cards and children's baby teeth. (ECF No. 19-19 at 8–9.) "Just as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." <u>Richter</u>, 562 U.S. at 110. The state court's determination that counsel was effective was not objectively unreasonable. Reaching this result, this court need not determine whether counsel's performance was prejudicial.

Because there is a reasonable argument that counsel satisfied the <u>Strickland</u> standard, this court recommends denying habeas relief on this claim.

### III. Insufficient Independent Evidence

Petitioner claims that there was insufficient evidence to corroborate his accomplice's testimony to support his convictions. (ECF No. 1 at 8; ECF No. 19-16 at 61.) Respondent contends that this claim is procedurally barred and that the state appellate court reasonably rejected it. (ECF No. 18 at 45–49.)

#### A. State Court Opinion

Petitioner raised this claim in his direct appeal. In the last reasoned state court decision, the California Court of Appeal considered and denied the claim:

#### II

Defendant next claims there was insufficient evidence to corroborate the testimony of Manoff, his accomplice, as to the burglaries.

#### A

A defendant cannot be convicted based on the testimony of an accomplice unless the accomplice's testimony is corroborated by

18

other evidence that tends to connect the defendant with the commission of the offense. (§ 1111; *see also People v. Perez* (2018) 4 Cal.5th 421, 452.) Corroborating evidence need not directly connect the accused with the offense but need only tend to do so. The requisite evidence " 'need not independently establish the identity of the [perpetrator]' [citation], nor corroborate every fact to which the accomplice testifies [citation]." (*People v. Romero and Self* (2015) 62 Cal.4th 1, 32 (*Romero* ).)

" '[C]orroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof.' " (*People v. Samaniego* (2009) 172 Cal.App.4th 1148, 1176, fn. 13 (*Samaniego* ).) But it may be circumstantial, slight and entitled to little consideration when standing alone. (*Id*. at p. 1177.) "It must raise more than a suspicion or conjecture of guilt, and is sufficient if it connects the defendant with the crime in such a way as to reasonably satisfy the trier of fact as to the truthfulness of the accomplice." (*Id*. at p. 1178.)

" 'The entire conduct of the parties, their relationship, acts, and conduct may be taken into consideration by the trier of fact in determining the sufficiency of the corroboration.' " (*Romero, supra*, 62 Cal.4th at p. 32.) Evidence corroborating details of the crime may form part of a picture from which the jury may be satisfied that the accomplice is telling the truth when considered with other evidence tending to connect the defendant to the crime. (*People v. Pedroza* (2014) 231 Cal.App.4th 635, 657, 659) We must eliminate from the case the evidence of the accomplice, and then examine the remaining evidence to ascertain if it tends to connect the defendant with the offense. (*People v. Shaw* (1941) 17 Cal.2d 778, 804.)

The jury in this case was properly instructed on the corroboration requirement. (CALCRIM No. 335) Unless we determine the corroborating evidence should not have been admitted or that it could not reasonably tend to connect defendant with the commission of the crimes, the finding on the issue of corroboration may not be disturbed on appeal. (*People v. Szeto* (1981) 29 Cal.3d 20, 27.)

**B**

With those principles in mind, we summarize as to each challenged burglary conviction the evidence corroborating Manoff's testimony concerning defendant's participation in the burglaries:

Count 1 (Nissen): Defendant led police to a gun taken in the burglary and admitted that he accidentally discharged the gun into the bed.

Count 2 (Allessio): Items taken in the burglary were found in the motel room, along with some of defendant's personal items. Defendant's cell phone was in the area at the time of the burglary.

Count 9 (Little): Defendant acknowledged he burglarized the home of a police officer who had an Asian wife. Defendant's cell phone was in the area at the time of the burglary.

////

19

Count 10 (Salinger): Defendant and Manoff went together to pawn the items taken from the Salinger home. (This evidence does not merely tie defendant to Manoff but also to the stolen items and, therefore, the burglary.)

Count 11 (Lawrence and Nancy Arens): Defendant admitted he participated in the burglary of the home of Lawrence and Nancy Arens. Defendant's cell phone was in the area at the time of the burglary.

Count 12 (Niven): Some of the stolen items were found in the motel room. Defendant's cell phone was in the area at the time of the burglary.

Count 13 (Rooker): Defendant and Manoff went together to pawn the items taken from the Salinger home, which was burglarized on the same day and in the same neighborhood where defendant attempted to burglarize the Rooker home.

Count 14 (Danny and Jerri Arens): Defendant admitted he participated in the burglary of the home of Danny and Jerri Arens. Defendant's cell phone was in the area at the time of the burglary, and some of the stolen items were found in the motel room, as were some of defendant's personal items.

Count 15 (McCarthy): Defendant's cell phone was in the area at the time of the burglary.

Count 16 (Nissen): Same as count 1 -- defendant led police to a gun taken in the burglary.

For each burglary about which Manoff testified, there was evidence that corroborated her testimony, tying defendant to the offense, even if the evidence was slight, circumstantial, or entitled to little consideration standing alone. (*Samaniego*, supra, 172 Cal.App.4th at pp. 1177-1178.) Much of defendant's argument to the contrary is based on the premise that his own statement was inadmissible. Because he forfeited consideration of the admissibility of his own statement by not objecting or moving to suppress, we need not consider whether there was sufficient corroborating evidence independent of defendant's statement. In any event, we also note that, as to each count that defendant admitted, there was other corroborating evidence, such as the presence of his cell phone in the vicinity of the crime.

The Attorney General argues the pattern of burglaries engaged in by defendant and Manoff also corroborated Manoff's testimony as to each burglary. We need not consider this argument because the corroborating evidence already discussed is sufficient.

Defendant's contention that there was insufficient corroboration of Manoff's accomplice testimony regarding the burglaries is without merit.

(ECF No. 19-19 at 12–15); Adams, 2019 WL 1497145, at *6–7.

20

1       **B. Discussion**

2           A writ of habeas corpus is not available for an alleged error of state law. See Swarthout v.

3   Cook, 562 U.S. 216, 219 (2011) (per curiam); Wilson, 562 U.S. at 5. The Supreme Court has

4   "reemphasize[d] that it is not the province of a federal habeas court to reexamine state-court

5   determinations on state-law questions." Estelle, 502 U.S. at 67–68. A federal habeas court is

6   bound by the state court's interpretation of state law. Bradshaw v. Richey, 546 U.S. 74, 76

7   (2005); Horton v. Mayle, 408 F.3d 570, 576 (2005) ("If a state law issue must be decided in order

8   to decide a federal habeas claim, the state's construction of its own law is binding on the federal

9   court.").

10          California Penal Code section 1111 provides that a "conviction cannot be had upon the

11  testimony of an accomplice unless it be corroborated by such other evidence as shall tend to

12  connect the defendant with the commission of the offense…." Cal. Penal Code § 1111. This state

13  law dictates that a conviction must be based on more than uncorroborated accomplice testimony.

14  See Laboa v. Calderon, 224 F.3d 972, 979 (9th Cir. 2000). But this requirement, however, is not

15  required by the United States Constitution or federal law. Id.; see also Jones v. Arnold, 593 F.

16  App'x 674, 674–75 (9th Cir. Feb. 13, 2015); Williams v. Prunty, 10 F. App'x 499, 500–01 (9th

17  Cir. May 16, 2001); Venegas v. Stagner, 843 F.2d 502 (9th Cir. 1988) ("[T]he contention that the

18  state court violated state law by convicting [petitioner] on the uncorroborated testimony of an

19  accomplice does not present a federal question cognizable in habeas corpus."). If the

20  accomplice's testimony is neither incredible nor insubstantial, "habeas [relief] will lie for

21  [petitioner] only if the alleged violation of section 1111 denied [petitioner] his due process right

22  to fundamental fairness." Laboa, 224 F.3d at 979. In other words, a petitioner is entitled to habeas

23  relief only if the state court arbitrarily deprived him of a state law entitlement. Id. (citing Hicks v.

24  Oklahoma, 447 U.S. 343, 346 (1980)).

25          The state court committed no such arbitrary denial here. Under section 1111, the

26  corroborating evidence "need not corroborate every fact to which the accomplice testified or

27  establish the corpus delicti, but is sufficient if it tends to connect the defendant with the crime in

28  such a way as to satisfy the jury that the accomplice is telling the truth." People v. Fauber, 2 Cal.

4th 792, 834–35 (1992) ("Corroborative evidence may be slight and entitled to little consideration when standing alone."). The state appellate court considered petitioner's claim and found sufficient corroboration of the accomplice's testimony, including: (1) stolen items recovered from motel room along with petitioner's personal items; (2) petitioner's cell phone location was in the vicinity of the crimes; (3) petitioner went with accomplice to pawn stolen items; and (4) petitioner's statements to police. As a result, petitioner was not arbitrarily denied a state law entitlement of his Fourteenth Amendment due process rights. And to the extent that petitioner's claim three merely repeats claim one, it is also procedurally barred. This court recommends denying relief on claim three.

## CONCLUSION

Petitioner fails to meet the standards set out in 28 U.S.C. § 2254(d) by showing the state court decision on any claim was contrary to or an unreasonable application of clearly established law as determined by the Supreme Court, or resulted in a decision based on an unreasonable determination of the facts.

Further, it is RECOMMENDED that petitioner's petition for a writ of habeas corpus (ECF No. 1) be denied.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the court within seven (7) days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

////

////

////

22

In the objections, the party may address whether a certificate of appealability should issue in the event an appeal of the judgment in this case is filed. <u>See</u> Rule 11, Rules Governing § 2254 cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

Dated: January 12, 2022

_____
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE